A. C. ALLEN ET AL. v. J. C. HUTCHESON.

Decided October 13, 1909.

**1.—Corporation—Election of Directors.**

When the charter of a corporation provides that its board of directors shall be elected by the stockholders, and that its office and place of business should be at a certain place, an election of directors by the existing board of directors at a meeting held at a place other than its place of business, is illegal and void.

**2.—Same—Acts of Individual Directors—Liability.**

The acts of the individual members of a board of directors of a corporation in the purchase of land and expenditures of money do not constitute the acts of the corporation, and such individuals are responsible to the stockholders for losses occasioned thereby.

**3.—Same—Constructive Fraud—Acts of Interested Directors.**

The acts of a board of directors in appropriating money of the corporation to the payment of back salaries to themselves, and to the purchase of land in which some of the members of the board are interested are illegal and void as against the stockholders.

**4.—Same—Violation of Decree of Court—Liability.**

Members of a board of directors of a corporation who wilfully expend and disburse the money of the corporation in violation of a decree of a court directing how the money shall be paid out, are personally liable to the persons to whom the decree directs the money to be paid; nor can this liability be avoided by the passive nonparticipation of a member in the action of the board, when the duty is expressly imposed upon such member by said decree to see that said money is applied in accordance with the directions of the decree.

Error from the District Court of Harris County. Tried below before Hon. Charles E. Ashe.

*Masterson, Atkinson & Masterson,* for plaintiff in error.—The charge complained of is erroneous wherein it instructed the jury:

"That the Tobin Oil-Company had on hand on January 28, 1905,

the sum of $8,642.93, and that it afterwards invested in boring wells in the Humble oil field, $7,399.01, and that said investment or expenditure of said amount was done without any authority of the board of directors of said company, which was a complete loss; and these dealings, being without authority, constituted constructive fraud, and the defendants are liable therefor to plaintiff for any injury occasioned him thereby;" and then declaring the injury for this and other acts mentioned as unlawful, to be $2,293, for which amount the jury were instructed to bring in a verdict for plaintiff.

1. Because the company was chartered for the purpose of establishing an oil company to produce, sell and market petroleum; a president and general manager were appointed to carry out the purpose of the charter, on land.purchased by the company for that purpose, and it required no formal action of the board of directors each time a well was sunk for the purpose of producing petroleum; and, if it did, the omission of such formalities did not constitute fraud of any kind, either actual or constructive; and, furthermore, the oil produced by said assumed unauthorized acts of said president and the general manager (who owned one-half of the stock of the company and were directors thereof) was marketed by said company and the proceeds of the sale thereof was put into the treasury of the company and reinvested by said company in the course of its business and within the scope of its charter powers; whereby the said acts of the officers were ratified, all legal quibbles satisfied, and errors of form condoned.

2. Because the undisputed evidence showed that this plaintiff in error took no part in expending said money in the Humble oil field, and had no knowledge thereof until after the plan to exploit for oil in said Humble and other fields had been determined upon, and the money of said company, to a large extent, expended for said purpose.

That general manager T. H. Bass had authority, without action of the board of directors, to expend the corporate funds to produce oil from its lands, see Hamm, Rec'vr., v. Drew, 83 Texas, 77; Nat'l Bank of Jefferson v. Goolsby, 35 S. W., 713; Tyler Building and Loan Asso. v. Forse, 59 S. W., 818; Dallas Ice Factory, etc., v. Crawford, 44 S. W., 875.

As to the liability of A. C. Allen, as director of the company, at the suit of stockholders, see Sperings' Appeal, 71 Pa. St., 11; Jeremiah Smith's Cases on Private Corporations, vol. 1, p. 358; Godbold v. Branch Bank at Mobile, 11 Ala., 191; Hodges v. New England Screw Co., 1 R. I., 312; Swentzel v. Penn Bank, 147 Pa. St., 140; Maisch v. Saving Fund, 5 Phila., 30.

The case of San Antonio Street Railway v. Adams, 87 Texas, 131, which held the resolution of board of directors void, because two out of four of the directors present and voting were individually interested in the matter voted on, is not applicable; because, Lovejoy's having one-third equitable interest in the land did not disqualify him to vote to purchase the two-thirds owned by Brown and Allen, and they could not recover their two-thirds interest back from the company, the legal title to which then stood in Brown. Jesup v. Illinois Central R. Co., 43 Fed., 483, 499, 500.

That corporate acts may be proved or established by parol, where omitted from the minutes, see Fort Worth Publishing Co. v. Hitson, 80 Texas, 216; Kelley v. Collier, 11 Texas Civ. App., 353; Pickett v. Abney, 84 Texas, 647.

*Hutcheson, Campbell & Hutcheson,* for defendant in error.—Duties of trustee: (a) Must conform strictly to the directions of the trust. 2 Pomeroy, sec. 1062.

(b) When the directions are made by a court, they must be carried out with absolute fidelity. 2 Pomeroy, sec. 1064.

(c) Must use due diligence in getting possession of the trust property, or is liable for negligence. 2 Pomeroy, secs. 1066-7; 28 Am. and Eng. Enc., 1065.

(d) Must not delegate his authority; if so, he is liable to the beneficiaries. 2 Pomeroy, sec. 1068; 28 Am. and Eng. Ency., 1066.

(e) Liable for failure or negligence on his part or any of his agents. 2 Pomeroy, secs. 1072-3, sec. 1075; 28 Am. and Eng. Enc., p. 1068.

(f) It is his duty to act in perfect good faith, and in the interest of the *cestui que* trust, and not deal with the property for his own advantage. 2 Pomeroy, sec. 1065.

(g) Cannot accept any position, or act in any relation, or do any act inconsistent with the interest of the beneficiary. 2 Pomeroy, sec. 1077, and notes; 28 Am. and Eng. Enc., 1071, and notes.

(f) Cannot trust funds or the management thereof to another. 28 Am. and Eng. Enc., p. 1066, and notes; p. 1073.

(g) Acquiescence in the misapplication of funds, or negligence to see to the direction and management of funds. 28 Am. and Eng. Enc., secs. 1070-1-2; and large list of cited authorities in note; Perry on Trusts, sec. 678; John v. Battle, 58 Texas, 598, citing Story, Equity, sec. 1211; Tenison v. Patton, 64 S. W., 810.

Is liable for the utmost value. 28 Am. and Eng. Enc., p. 1121; Pomeroy, Eq. Jur., secs. 1080 to 1084.

The underlying principles and grounds on which equity will hold such transaction void discussed at great length and ability in: Gardner v. Ogden, 22 N. Y., 341-350; Michoud v. Girod, 4 Howard, U. S., 503.

That the directors of a corporation are trustees for the stockholders, and as such are bound to act with the utmost good faith for the common interest of all; and that they can not secure to themselves an advantage not common to all the stockholders, and are liable for so doing: 10 Cyc., 787-788, citing many cases; also 791; 6 Thompson on Corporations, sec. 4009; Pomeroy's Eq. Juris., sec. 1090; Cook on Stock and Stockholders, secs. 648 and 657.

To this unanimous holding of the text-books and cyclopedias, we add some of the most important cases: Tenison v. Patton, 64 S. W., (Texas), 811; Koehler v. The Black R. F. I. Co., 2 Black (U. S.), 721; Miner v. Belle Isle Ice Co., 17 L. R. A., 416; Farmers Loan & Trust Co. v. N. Y. R. R. Co., 34 L. R. A., 76-84. (All these splendid cases.)

As to back salaries: McNulta v. Corn Belt Bank, 56 Am. St. Rep., 211; First Cook on Stock and Stockholders, sec. 657; Wicker-

sham v. Crittenden, 93 Cal., 17; Gridley v. Lafayette R. R., 71 Ill., 200; Butts v. Wood, 37 N. Y., 318-319.

As to the necessity of a majority of disinterested directors: San Antonio St. Ry. Co. v. Adams, 87 Texas, 131; 10 Cyc., 811; Coleman v. Second Ave. Ry. Co., 38 N. Y., 201; Butts v. Wood, 37 N. Y., 317.

That all action of a board of directors must be taken at a meeting duly assembled, otherwise is void: 3 Thompson on Corporations, secs. 3905-6, 3908; 10 Cyc., 774, notes 69 and 70.

Nor can ratification take place except by board duly assembled: 10 Cyc., 775; notes 70-73, with large list of authorities.

That the quorum present, consisting entirely of parties at interest in the resolution passed, was wholly illegal and void: Thompson on Corporations, sec. 8478; San Antonio St. Ry. Co. v. Adams, 87 Texas, 131 (opinion by Justice Gaines); 10 Cyc., 811.

NEILL, ASSOCIATE JUSTICE.—On August 15, 1903, the J. J. Tobin Oil Company was incorporated under the laws of this State, L. E. Daniell, J. J. Tobin, M. M. Jackson, Stephen Jackson and M. A. Robertson being the original incorporators, and who were declared in the articles of incorporation to be the directors for the first year.

The powers of the corporation, as declared in its charter, were "For the establishment of an oil company for the purpose of producing, selling, and marketing petroleum, with authority to contract for the lease and purchase of the right to prospect for, develop and use coal and other minerals and petroleum; also the right to erect, build and own all necessary oil tanks, cars and pipes necessary for the operation of the business of said association." The charter also provided that the place of business of the association should be in the town of Sour Lake, Hardin County, Texas, and that it should be its principal office; that its business should be transacted by five directors, who should be elected by the stockholders annually, on the first Tuesday in July; and that its capital stock should be $40,000, to be divided into 400 shares of $100 each.

After its organization, one hundred shares of the capital stock, being one-half of the stock issued, became involved in litigation. In the suit A. C. Allen was plaintiff, and the Oil Company, L. E. Daniell and others, among whom was J. C. Hutcheson, were defendants or adverse parties. The cause just referred to was styled A. C. Allen v. L. E. Daniell et al. was numbered 3439, and brought in the sixty-first Judicial District.

On May 7, 1904, an agreed judgment was entered in that suit, the substance of which is as follows: A. C. Allen recovered against all defendants, all interveners and parties to the suit the entire 100 shares of stock sued for (the certificates for the stock being specifically described in the judgment), charged with certain trusts impressed upon the stock by the judgment or decree, which are as follows: $15,450 for the benefit of A. C. Allen; $4,000 for the benefit of the First National Bank of Sour Lake, Texas; $7,000 for the benefit of Geo. W. Armstrong, and $10,750 for the benefit of J. C. Hutcheson.

The judgment further orders that the Oil Company shall issue certificates for said 100 shares of stock to A. C. Allen in such way as

he may request or direct; that the Oil Company shall pay Allen all dividends that have theretofore accrued on said 100 shares of stock, and dividends that may thereafter accrue thereon; that the money in the registry of the court of the 55th Judicial District and in the First National Bank of Houston, Texas, be prorated among Allen, the First National Bank of Sour Lake, Geo. W. Armstrong and J. C. Hutcheson, according to the several amounts allowed them by the decree; that all dividends and earnings which might thereafter accrue upon the 100 shares of stock should be prorated among A. C. Allen, the First National Bank of Sour Lake, Geo. W. Armstrong and J. C. Hutcheson, proportionate to their several amounts until they shall have been fully paid and discharged, and that then the title of said 100 shares of stock should become absolute in A. C. Allen and not before; that the Oil Company should at once put on the market and dispose of the oil then on hand and deposit the money realized therefrom applicable to said 100 shares of stock affected by the decree, in court for distribution as ordered.

At the time the agreed judgment was entered the company had four wells on its ten-acre tract at Sour Lake, one of which at that time was not productive and had been abandoned prior to that time; one other produced very little and after that time it did not pay to operate it; the other two produced large quantities of oil, and these conditions prevailed on the first of January following. The wells were operated under lease at that time, and the Company received two-thirds of the gross production, amounting to about $5,000 per month free of any expense. There were no outstanding debts against the Company at that time. Prior to the date of the agreed decree, the Tobin Oil Company was, by an order of the court, required to pay into the registry of the court, or into the First National Bank, the dividends due on the 100 shares of stock in controversy, which amounted to the sum of $16,039.15. The Company obeyed the order by depositing that amount in said bank, and that money was on hand when the agreed judgment referred to was entered. There seems to have been no oil on hand at that time.

On December 19, 1904, the books of the Oil Company showed a balance to its credit of $18,355.04, out of which a dividend of $11,550 was declared, one-half of which was payable to A. C. Allen on the 100 shares of stock held by him under the trust impressed by the decree aforementioned. At its close of business, on January 28, 1905, the Tobin Oil Company had on hand $8,649.93, and there was also then due it from the Guffy Company for oil about $200.

The $16,039.15, placed in the bank under the direction of the court, and one-half of the dividend of $11,550 declared by the Company was paid to Allen and prorated and distributed by him among the beneficiaries in accordance with the decree, J. C. Hutcheson receiving his pro rata share thereof. This was all the money he ever received from Allen or any one else upon the 100 shares of stock held by him under the decree charged with the trust thereby impressed thereon.

L. F. Benckenstein acted as the president of the J. J. Tobin Oil Company on November 7, 1904, claiming to have been elected on August 13, of that year. At the same time T. H. Bass claims to have

been elected secretary and treasurer of the Company and held said position from then until the suit was brought.

When this suit was instituted L. F. Benckenstein, Mally Eastham, T. H. Bass, A. C. Allen and John Lovejoy were acting as the directors of the Oil Company. Benckenstein and Eastham claim to have been elected members of the board of directors of the Company on August 1, 1904, and T. H. Bass on August 19, 1904, and A. C. Allen and John Lovejoy on January 28, 1905. But it appears from the minutes of the proceedings on those dates that each of them was elected by the board of directors instead of by the stockholders of the Company as provided by its charter. On the same day 99 of the shares of the stock covered by the decree above referred to were issued to A. C. Allen and the other share to John Lovejoy and registered on the books of the company in their names.

On January 28, 1905, the sum of $1,250 apiece was voted to L. F. Benckenstein and T. H. Bass for salaries from August to February past, also resolutions were passed to buy one-tenth of an acre of land at Humble and ten acres near Dayton and to pay therefor $2,500. All these resolutions were passed by the votes of Benckenstein, Bass and Lovejoy, though Allen was present, but not voting. Both Lovejoy and Allen were owners in common with S. Brown of the land so purchased, Allen having bought the land subsequent to May 7, 1904, for a much less price than it was sold to the Tobin Oil Company and afterwards made Brown a deed to it. The money thus voted to Benckenstein and Bass by themselves was received by them, and the price of the land by Brown and his co-owners. The purported resolutions thus appropriating this money of the Company were passed at a meeting purporting to be of its board of directors, held in the city of Beaumont, Jefferson County, instead of at its office and place of business at Sour Lake, Hardin County, Texas. After this the remainder of the money, $7,399.61, was spent in boring a well for oil on the one-tenth of an acre at Humble purchased under and by virtue of said resolutions. No oil was obtained by this expenditure, which was made at the instance of Benckenstein, Bass, Allen and Lovejoy, without the consent of its board of directors and without Hutcheson's knowledge, and against his protest made to Allen as soon as he heard of it. In the meantime, the wells of the company at Sour Lake had been exhausted and had ceased to yield enough oil to pay expenses of operating them. Upon the expenditure of the $7,399.61 in the fruitless effort to obtain oil at Humble, the Company's resources were entirely consumed and it ceased to do business; and, in effect, became a bankrupt and ceased to pay its annual corporation tax from that time.

On these undisputed facts, substantially alleged in his second amended original petition, J. C. Hutcheson brought suit against A. C. Allen, T. H. Bass, L. Benckenstein and the J. J. Tobin Oil Company, to recover of them the balance due him, as charged by the decree of May 7, 1904, on the 100 shares of stock held in trust by Allen for its payment. Allen denied any breach of the trust imposed upon him by the decree, or failure of his duty as a member of the board of directors to plaintiff, or of any participation in the acts of

the other members of the board which resulted in plaintiff's loss of the money claimed by him under said decree of the District Court on the 100 shares of stock charged in his (Allen's) hands with its payment. Allen also filed a cross-bill interpleading other parties. The defendants Bass and Benckenstein interposed a general and special exceptions to the plaintiff's petition, pleaded a general denial and, specially, that each of them were duly elected members of the board of directors of the Company; that they acquired in due course of business, in open market, for a valuable consideration, 100 shares of the capital stock of the Oil Company, which they then owned. That since their election as members of said board, each, in conjunction with its other members, has legitimately applied the income and profits of the Company to the prosecution of its business and purposes as authorized by its charter; and that neither of them has in any manner conspired with Allen or any other person to divert the assets of the corporation to any other purpose than its legitimate business, or in any manner sought to divert from plaintiff any dividends accruing to him or any other person, but, on the contrary, has faithfully applied to those entitled thereto all dividends which have accrued upon stock of said company.

The case was tried before a jury, whom the court instructed as follows:

"The uncontroverted evidence in this case shows that on the 28th day of January, 1905, that the Tobin Oil Company had on hand $8,642.93, and that thereafter it invested in the boring of wells in the Humble oil field, $7,399.61. You are further instructed that the resolution of the board of directors of the Tobin Oil Company of January 28, 1905, voting to Bass and Benckenstein $2,500, and to S. Brown $2,500 for the use of Brown, Lovejoy and Allen on a purchase of land, was illegal and void, for the reason that the directors voting said amounts were personally interested therein; and you are further instructed that the purchase of the one-quarter of an acre of land in the Humble oil field, upon which they afterwards bored for oil, for $2,500, was made without any resolution or authority of the board of directors so to do; and you are further instructed that the subsequent expenditure of $7,399.61, in boring the oil well in the Humble field, was done without any authority of the board of directors of said company, and that the amount of money so expended was a complete loss. These dealings being without authority, without reference to whether they constituted actual fraud, did, at least, constitute constructive fraud, and that the defendants are liable therefor to the plaintiff for any injury occasioned him thereby; and you are further instructed that the plaintiff's proportion of the amount so expended amounted to $2,293. You are therefore instructed to return a verdict in favor of the plaintiff against all of the defendants for $2,293. You are further instructed to find against the defendant A. C. Allen, on his cross-action against the defendants Bass and Benckenstein."

A verdict was returned in accordance with the charge, and upon it the court rendered judgment in favor of J. C. Hutcheson against A. C. Allen, T. H. Bass and L. F. Benckenstein and the J. J. Tobin Oil Company for the sum of $2,293, together with interest from its date

at the rate of six percent per annum. From the judgment all the parties against whom it was rendered sued out this writ of error; but it is prosecuted by A. C. Allen alone, none other of the parties having filed a brief in this Court.

It is complained that the court erred in giving the peremptory charge above 'quoted. If the foregoing undisputed facts do not conclusively show a fraudulent conspiracy on the part of defendants to deprive the plaintiff of the balance of his money with which the decree charged the one hundred shares of stock and imposed upon the J. J. Tobin Oil Company the duty of paying, out of the dividends and earnings, to Allen, to be paid by him as directed, they at least establish such constructive fraud as to make them all liable to plaintiff for his pro rata share of the money earned by the corporation and wrongfully appropriated, against the express commands of the decree, for back salaries, bits of land and frittered away in proudly boring for oil in Humble fields. If it should be conceded that men can constitute themselves members of a board of directors of a corporation at socalled meetings of such a board, held in a city other than where its charter fixes its general office and place of business, and contrary to the law and express provisions of its charter which provide its directors shall be elected by its stockholders at a stockholders' meeting, it can not be said that its directors can at such a meeting legally appropriate to themselves money of the company by their own vote, or that a director can in such manner make a sale, in which he is interested, to the corporation. *A fortiori* can this not be done where the money is earnings of the corporation expressly appropriated by a decree of the court against the corporation, of which its board of directors are bound to take notice, to the payment of a debt due another party, as is indisputably shown by the evidence in this case. Nor can the one, on whom the duty of receiving the money from the corporation and distributing it among those entitled to it was imposed by the decree, stand idly by with folded arms while he sees the money, thus appropriated, diverted from the purpose for which it was decreed, squandered and frittered away by the wrongful actions of those claiming to be the board of directors and managers of the corporation, and say, "I wash my hands of the whole matter." But when he sees, knows or has reasonable grounds to believe that the money is being or is about to be so diverted, it is his bounden duty to invoke the power of the court which impressed the trust upon him to prevent the dissipation of the fund and have it paid him, in order that he may discharge his duties as trustee to the beneficiaries. The undisputed facts in this case conclusively show that, if he did not actively participate in the diversion and misappropriation of the money, the defendant Allen knew or had good reason to know that it was being done, and that he failed to take any steps whatever to protect the beneficiaries of his trust, one of whom was the plaintiff in this case.

The judgment, as is shown by the facts, is so clearly just in the eye of equity that we deem it unnecessary to say more.

*Affirmed.*

Writ of error refused.